UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KEITH BALKMAN,

               Petitioner,                             **DECISION AND ORDER**
                                                         **No. 06-CV-6120(VEB)**

     -vs-

POOLE, SUPERINTENDENT,

               Respondent,

_____

## I.      Introduction

*Pro se* petitioner Keith Balkman ("Balkman" or "petitioner") has filed a petition for writ

of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state custody pursuant to a

judgment of conviction following a jury trial on one count of second degree (intentional) murder,

for which he was sentenced on April 17, 1998, to an indeterminate term of imprisonment of 25

years to life.

      The parties have consented to disposition of this matter by a magistrate judge pursuant to

28 U.S.C. § 636(c)(1).

## II.     Background

      Balkman's conviction stems from the shooting death of Scott Fries in the City of

Rochester on May 28, 1997. Balkman was indicted under two theories of homicide–intentional

and depraved indifference. The police apprehended Balkman two days later, in possession of the

murder weapon. T.410-13, 496-514.[1] Balkman confessed to shooting Fries and suggested to the

police that he had acted in self-defense. T.456-57.

---

[1]        Citations to "T.__" refer to pages from the transcript of Balkman's trial.

At trial, eyewitness Robert Louis ("Louis"), who described himself as a "good friend"of Balkman, identified him as the shooter. T.279-83. Louis testified that he was in his living room, on Murray Street, at the time of the shooting on. Shortly after 11:00 p.m. he heard a gunshot and looked out his window, where he saw Balkman "pointing the gun to a white guy's face and shooting the guy." T. 279. The incident occurred just outside of Louis' house, directly under a streetlight. T. 283. After Louis saw Balkman shoot Fries, he saw Balkman run up the street toward Lyell Avenue. Louis stated that Balkman ran directly past Louis' vantage point at his window. T. 279-81. Louis had known Balkman for several months, and estimated that he saw him "at least 20 times a day." T.281. Louis admitted that their friendship was based on "smoking weed together." T.281. In the days following the shooting, when Louis would see petitioner around, people would occasionally kid around with Balkman that the police were coming for him. Louis said that these comments typically sent Balkman running. T. 284.

Two days after the shooting, acting on a tip that Balkman and another man were riding bikes and carrying handguns, Rochester Police Officer Kevin Adami spotted petitioner, riding a bike and clutching something under his jacket. Officer Adami chased petitioner in his vehicle and then on foot, ultimately into the arms of another Officer, David MacFall. T.359-65. Immediately before he was apprehended, Officer MacFall saw Balkman toss a pistol away. The pistol was recovered. Forensic testing performed by the prosecution yielded results identify it as the murder weapon. T.375-77, 496-514.

Once the connection was made between the murder weapon and Balkman, the police questioned him about the murder. Balkman waived his rights and gave a statement in which he confessed to shooting Fries. He claimed, however, that he did so because he was afraid Fries was

going to shoot him at some time in the future. T. 456-57.

At trial, Balkman presented an alibi defense on the basis that he allegedly was sleeping at a neighbor's house at the time of the shooting. T. 627-28. The defense also presented the testimony of an alleged eyewitness to the shooting, George Stanton ("Stantdon"), who claimed that Fries was shot by an unidentified third party. Stanton was unable to recall when the shooting took place. Stanton, who described himself as one of Balkman's friends, did not know where Balkman lived. T.532-33). Stanton explained that he was with his girlfriend, Christine Friederich, and a friend of hers, named Christy, whose last name he could not remember. T.533. (It was later learned that Christy's last name was Myers.). Neither Friederich or Myers could be located to testify at trial.

Stanton testified that on the night of the shooting, he had spoken with Fries on Murray Street, and directed him to a group of people up the street: Bobby Lathrop; a person he knew as "George" and who had the nickname, "Peanut"; and another person who Stanton first claimed he did not know, then later identified by the street name, "Nino." T. 537, 550. After some confusion concerning the real identities of "Peanut" and "Nino", defense counsel finally elicited from Stanton that he did not know the last name of George, also known as "Peanut." However, another witness identified "Nino" as George Mateo, and "Peanut" as a George McFadden. T.547, 556. In any event, Stanton said that Fries got into an argument with the man he did not know, and ultimately that unidentified man shot Fries. T. 535-39. Stanton denied that Balkman was the shooter. T. 540.

McFadden, who was identified as the person nicknamed "Peanut", testified for the defense. McFadden's testimony, however, undermined defense witness Stanton's version of

events since McFadden testified that he was in New Orleans at the time, that he did not know anyone named "Nino" or George Mateo, and that he never saw Scott Fries get murdered. T.613-15. During this damaging testimony, the trial judge observed petitioner's mother, Carolyn Balkman, "signaling and gesturing" to McFadden. T.616.

Following the guilty verdict, petitioner appealed to the Appellate Division, Fourth Department, raising only two issues–whether the gun should have been suppressed as evidence, and whether the sentence was harsh and excessive. Neither of these grounds is raised in the instant habeas petition. The Fourth Department affirmed the conviction, and the New York Court of Appeals denied leave to appeal. *People v. Balkman*, 277 A.D.2d 973 (4th Dept. 2000), *lv. denied*, 96 N.Y.2d 780 (2001).

Subsequently, Balkman brought a motion in the trial court to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 (1) (g) on the ground that there existed newly discovered evidence of his innocence. Balkman relied upon a statement purportedly made by George Mateo ("Mateo") to an individual named John Moore ("Moore") while the two were inmates in the Monroe County Jail. According to Moore, Mateo admitted that he was responsible for the murder for which petitioner had been convicted. In addition, Mateo's former girlfriend, Scafelga Gomez ("Gomez"), signed a statement indicating that Mateo had admitted his involvement to her. Finally, petitioner presented a statement from Christine Friederich (the girlfriend of defense witness George Stanton) saying that she knew petitioner, and he was not the shooter.

The County Court (Marks, J.) ordered a hearing on this newly discovered evidence. Mateo, the alleged shooter identified by Moore and Gomez, was called as a witness, but he

refused to testify, invoking his Fifth Amendment privilege against self-incrimination. H. 6-7.

Gomez, Mateo's former girlfriend, did testify, but affirmatively denied that Mateo had ever admitted any involvement in the shooting. Indeed, Gomez denied having any knowledge whatsoever of the murder. H.12-13, 16. Her sworn testimony thus completely contradicted the statement by her that Balkman had initially submitted in support of the C.P.L. § 440.10 motion.

Moore, the jailhouse informant, testified. His testimony thus was the only purported "newly discovered evidence" before the motion court. The County Court, in a decision and order dated August 18, 2004, denied the C.P.L. § 440.10 motion. The County Court found Moore to be so lacking in credibility that even if he had testified at trial, there was no reasonable probability that the verdict would have been different. The Appellate Division, Fourth Department, denied petitioner's application for leave to appeal to that court on June 3, 2005. Petitioner then sought leave to appeal that denial to the New York Court of Appeals; that application was dismissed on September 16, 2005, on the grounds that no appeal to the Court of Appeals lies from an Appellate Division order denying leave to appeal denial of a C.P.L. § 440.10 motion. *See* N.Y. CRIM. PROC. LAW § 450.90(1).

Balkman filed his habeas petition on December 18, 2005, according to the prisoner mailbox rule. There is no issue of untimeliness. The sole question presented in Balkman's petition is whether the trial court erred in denying his motion to vacate the judgment based upon the newly discovered evidence he presented at the C.P.L. § 440.10 hearing, thereby depriving of his due process right to a fair trial. *See* Petition and Attachments (Docket No. 1). Respondent argues that Balkman did not exhaust his newly discovered evidence claim by fairly presenting in constitutional terms to the state courts. Respondent's Memorandum of Law ("Resp't Mem."); *id.*

-5-

at 9 (citing *Baldwin v. Reese*, 541 U.S. 27, 31-33 (2004). In any event, the a claim of actual

innocence, such as that alleged by Balkman, has never been held by the Supreme Court to present

a cognizable habeas claim. *See* Resp't Mem. at 10 (citing *Herrara v. Collins*, 506 U.S. 390, 400

(1993); *Townsend v. Sain*, 372 U.S. 293, 317 (1963)).

 For the reasons that follow, the petition is dismissed.

**III. Discussion**

 **A. Standard of Review**

 When a petitioner "in custody pursuant to the judgment of a State court" seeks habeas

review of "any claim that was adjudicated on the merits in State court," a habeas writ may issue

only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law as determined by the

Supreme Court if either (a) "the state court arrives at a conclusion opposite to that reached by the

Supreme Court on a question of law," or (b) "the state court considers facts that are materially

indistinguishable from a relevant Supreme Court case and arrives at an opposite result." *Williams*

*v. Taylor*, 529 U.S. 362, 405 (2000)).  An "unreasonable application" of clearly established

federal law occurs if (a) " 'the state court identifies the correct governing legal rules from the

[Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's

case,' " or (b) the "state court invokes a Supreme Court case and unreasonably extends its legal

principle to a new context where it should not apply, or fails to extend it where it should apply."

*Williams*, 529 U.S. at 407.

**B.      Analysis of Petitioner's "Newly Discovered Evidence" Claim Under "Clearly Established Supreme Court Precedent"**

Balman contends that Moore's testimony regarding Mateo's alleged confession to the crime proves that Balkman is innocent and his continued incarceration violates his due process rights. This type of argument "has been characterized as a free-standing innocence claim when not coupled with allegations of constitutional error at trial." *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) (citing *Schlup v. Delo*, 513 U.S. 298, 314-17 (1995) (explaining the difference between a procedural innocence claim, which can permit a petitioner to transcend procedural obstacles that would otherwise preclude review of underlying constitutional claims, and a petitioner's substantive claim of innocence which alleges in and of "'itself a constitutional claim'") (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)); *see also Herrera*, 506 U.S. at 416-17) ("Federal habeas review of state convictions has traditionally been limited to claims of constitutional violations occurring in the course of the underlying state criminal proceedings. Our federal habeas cases have treated claims of 'actual innocence,' not as an independent constitutional claim, but as a basis upon which a habeas petitioner may have an independent constitutional claim considered on the merits, even though his habeas petition would otherwise be regarded as successive or abusive. History shows that the traditional remedy for claims of innocence based on new evidence, discovered too late in the day to file a new trial motion, has been executive clemency.").

"[N]ewly discovered evidence only warrants habeas relief where it bears  on 'the constitutionality of the applicant's detention; the existence merely of newly discovered evidence

relevant to the guilt of a state petitioner is not a ground for relief on federal habeas corpus.' "

*Mapp v. Clement*, 451 F. Supp. 505, 511 (S.D.N.Y.1978) (quoting *Townsend v. Sain*, 372 U.S. 293, 317 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992)), *aff'd without op*. 591 F.2d 1330 (2d Cir.1978), *cert. denied*, 440 U.S. 948, 99 S.Ct. 1428 (1979); *accord Herrera v. Collins*, 506 U.S. at 416-77. A claim of actual innocence can only serve to excuse a procedural default so that a petitioner may bring an independent constitutional claim challenging his conviction or sentence. *Herrera*, 506 U.S. at 404. *Herrera* explained that "[t]he rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution– not to correct errors of fact." *Id.* In other words, a habeas court is concerned "'not [with] the petitioners' innocence or guilt but solely [with] the question whether their constitutional rights have been preserved.'" *Id.* (quoting *Moore v. Dempsey*, 261 U.S. 86, 87-88 (1923)) The due process clause guarantees only that a trial is procedurally fair, and not that the verdict is factually correct. *Id.* at 401-02 (citing, *inter alia*, *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983)).

The petitioner in *Herrea* presented what he believed to be newly discovered evidence of his actual innocence–an affidavit by another individual stating that he, not Herrera, had committed the murder for which Herrera had been convicted and sentenced to death. The Supreme Court explained that although a showing of actual innocence may serve as a gateway to the airing of the petitioner's defaulted federal claim, "claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera*, 506 U.S. at 400. In his habeas petition, Herrera did not assert that the prosecutor had

known of his innocence, and so did not appear to be arguing that the prosecutor had committed any misconduct. The Supreme Court determined that Herrera had not established that any constitutional violations had occurred at his trial.

The *Herrera* court assumed for the sake of argument "that in a *capital* case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Herrera*, 506 U.S. at 417 (emphasis supplied). However, the Supreme Court found, the alleged new evidence of innocence was mostly hearsay, produced eight years after trial and only after the death of the alleged perpetrator, fell "far short of that which would have to be made in order to trigger the sort of constitutional claim which [it] ha[d] assumed, *arguendo*, to exist." *Id.* at 419. Accordingly, the Supreme Court affirmed the Court of Appeals' denial of habeas relief.

In *House v. Bell*, 547 U.S. 518 (2006), the Supreme Court declined to answer the question left open in *Herrera* of whether a habeas petitioner may bring a freestanding claim of actual innocence. The court noted in *House* that it had assumed in *Herrera* that "'in a capital case a truly persuasive demonstration of "actual innocence" made after trial would render the execution of a defendant unconstitutional, and warrant habeas relief if there were no state avenue open to process such a claim.'" *House*, 547 U.S. at 554 (quoting *Herrera*, 506 U.S. at 417)). In *House*, the Supreme Court declined the petitioner's request to answer the question left open in *Herrera* and hold not only that freestanding innocence claims are possible but also that he had established such a claim. *Id.*

Neither *Herrera* nor *House* address the issue present here–whether a freestanding actual innocence claim, not linked to an underlying constitutional violation, is available to a habeas petitioner in a non-capital case. Some courts have held that under these circumstances, no constitutional question is presented. *See Wright v. Stegall*, No. 05-2419, 247 Fed.Appx. 709, 712 (6th Cir. Sept. 5, 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that petitioner's claim is not entitled to relief under available Supreme Court precedent.").

Even assuming for the sake of argument that a freestanding actual innocence claim, without an underlying constitutional trial violation, is amenable to federal habeas review in a non-capital case, I conclude that "the new evidence proffered in this case simply cannot satisfy the hypothetical *Herrera* standard." *Cress v. Palmer*, 484 F.3d at 855 (citation omitted).[2] In *Cress*, a non-capital habeas case, the petitioner's "actual innocence" evidence consisted of a "weak, unsworn recantation statement from one of several witnesses who testified at trial concerning the petitioner's repeated admissions of guilt; a confession from someone who was strongly motivated to confess falsely for ulterior reasons and who, according to other testimony, admitted to having confessed falsely; and a 'qualified' polygraph report." 484 F.3d at 855. For the sake of argument, the Sixth Circuit overlooked the fact it was not a capital case. After reviewing the proffered "new" evidence, it agreed that "if presented at trial, [the evidence] might have weakened the prosecution's case against Cress"; however, "after [petitioner] was convicted

---

[2]        *See Herrera*, 506 U.S. at 417 ("[B]ecause of the very disruptive effect that entertaining claims of actual innocence would have on the need for finality in capital cases, and the enormous burden that having to retry cases based on often stale evidence would place on the States, the threshold showing for such an assumed right would necessarily be extraordinarily high."); *see also House*, 126 S. Ct. at 2087 ("In *Herrera*, however, the Court described the threshold for any hypothetical freestanding innocence claim as 'extraordinarily high.'").

-10-

in a trial free of constitutional error, the burden of proof shifted to him." *Id.* (citing *Herrera*, 506 U.S. at 400 ("Once a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears.") (citation omitted)). The Sixth Circuit determined that petitioner "[c]learly" had not been successful, given the "extraordinarily high"–albeit "amorphous" burden of proof that the Supreme Court had hypothesized for a stand-alone actual innocence claim.

Here, the only "newly discovered evidence" of Balkman's "actual innocence" was the testimony from a jailhouse informant purporting to relate a confession by a fellow inmate. Moore was an incorrigible witness, addressing the court disrespectfully and using profanities. H.22, 47. More important, Moore's testimony was inherently lacking in credibility–he could provide no details about the circumstances surrounding the murder, stating that the alleged confessor (Mateo) had not given him any. Further detracting from the credibility of the purported confession was that, according to Moore, the killer (Mateo) told him that the victim was black. However, the victim in this case was white.

Specifically, Moore testified that Mateo had admitted to him that he (Moore) had killed a black man on Murray Street. However, the victim here, Scott Fries, was white. According to Moore, Mateo told him he had shot and killed a black man, but "didn't give any detail" about the shooting. H.41.[3] Moore initially testified that he had spoken with Mateo on a "couple" of occasions about the incident; later Moore testified that he had only talked with Mateo "probably once," and that he could not recall when the conversation took place. H.43. Moore could not recall telling the police that Mateo had told him that Balkman had been apprehended trying to

[3] Citations to "H.__" refer to the transcript of the C.P.L. § 440.10 hearing.

-11-

sell the murder weapon. When confronted with his statement to that effect, Moore responded that

that "[a] lot of reefer and drinks fucked up [his] memory, you know[.]" H. 46. Moore initially

said that Mateo had killed the man over "a debt," but he later testified that Mateo said he did it

"[b]ecause he was drunk and in a bad mood," adding this observation: "I guess he [the victim]

owed him [Mateo] some money." H. 40, 50. Moore did not indicate that there were other

individual's present at the shooting, in contrast to prosecution witness Stanton's trial testimony.

Balkman's proffered evidence of actual innocence simply does not cast doubt on his guilt

sufficient to satisfy the gateway standard for obtaining federal habeas review of a claim subject to

a state procedural default. *See Schlup*, 513 U. S, at 327 (prisoners asserting innocence as a

gateway to defaulted claims must establish that, in light of new evidence, "it is more likely than

not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt");

*accord House*, 547 U.S. at 518. Notably, the Supreme Court has read its precedents as "at least

impl[ying]" that a standalone actual innocence claim under *Herrera* "requires more convincing

proof of innocence than *Schlup*." *House*, 547 U.S. at 555; *accord Albrecht v. Horn*, 485 F.3d

103, 126 (3d. Cir. 2007) ("In sum, Albrecht cannot exploit the new scientific knowledge here,

assuming for the sake of argument that it is new, because of ample other evidence of guilt. He

has not shown that he meets the Schlup gateway standard because we cannot conclude that, had

the jury heard all the conflicting testimony, it is more likely than not that no reasonable juror

viewing the record as a whole would lack reasonable doubt. *Schlup*, 513 U.S. at 327, 115 S.Ct.

851. It follows that neither has Albrecht met the heightened *Herrera* standard of proving actual

innocence on a freestanding innocence claim. Thus, habeas relief is unavailable on the innocence

claim.") (footnote omitted). Even assuming that Balkman has stated a cognizable claim of newly

discovered "actual innocence," Balkman has not demonstrated that the County Court's rejection of his claim was contrary to or an unreasonable application of clearly established Supreme Court precedent, given the extremely unconvincing nature of his proof. Accordingly, habeas relief is denied.

## IV.     Conclusion

For the reasons stated above, Keith Balkman's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2);  *Greene v. Walker*, No. 98-2149, 1999 WL 1489805, *1 (2d Cir. Dec. 29, 1999) (unpublished disposition) ("This Court may issue a certificate of appealability only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Claims of actual innocence, standing alone, fall short of this standard. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). Since Greene's claim fails to demonstrate a constitutional defect that would undermine the underlying conviction in this case his motion for a certificate of appealability [as to whether his conviction can be vacated as a result of newly discovered evidence] is denied.").

**IT IS SO ORDERED.**

/s/ Hon Victor E. Bianchini

_____
                    VICTOR E. BIANCHINI
                    United States Magistrate Judge

DATED:      July 22, 2010
                 Rochester, New York